THE PEOPLE *ex rel.* Bernard Wernsing

*v.*

SAMUEL WINTER *et al.*

*Filed at Mt. Vernon January 25, 1886.*

1. TAXATION—*remedies for collection—by personal action, and in rem—whether concurrent—rights of holder of certificate of sale under personal judgment—subrogation.* In 1879 a personal judgment in favor of the People was recovered against a party for taxes due on his land for the years 1870 to 1878, inclusive, and a transcript thereof filed in the office of the circuit clerk, and execution sued out and levied on the defendant's homestead, which was stricken off to the county upon a bid for the full amount of the judgment. The county sold the certificate of purchase, whereby all the taxes were received and paid over. The purchaser of the certificate took out a sheriff's deed, and finding the sale was invalid, as being of a homestead, filed a bill and had the sale and satisaction of the judgment set aside, and was by the decree subrogated to the rights of the county. After this personal judgment these taxes were dropped from the collector's books from 1879 to 1884, when they were again entered on the tax books, and in May, 1885, the collector applied for judgment against the same land for these taxes, but on objections interposed, the county court refused judgment: *Held,* that the judgment was proper, there being no taxes due on the land for those years, and that application for judgment could not be had for the use of the purchaser of the certificate of purchase and equitable owner of the personal judgment.

2. A purchaser of land under execution issued upon a personal judgment in favor of the State for taxes, failing to acquire any title, and who is by the decree subrogated to the rights of the State to collect the judgment for his use, will not have the right to proceed *in rem* in the name of the State to enforce collection of the judgment. The right to proceed *in personam* against a person for taxes due on his land, and *in rem* against his land, belongs exclusively to the State, and can not be exercised by private persons.

APPEAL from the County Court of Effingham county; the Hon. S. F. GILMORE, Judge, presiding.

Mr. HENRY B. KEPLEY, for the appellant:

The same land involved in this suit was sold under a judgment *in personam* for the same taxes sought to be collected here, and this court held the sale void for the reason the land was the homestead of Winter. *Douthett* v. *Winter*, 108 Ill. 330.

Since that decision a decree was entered setting aside such sale, the sheriff's deed, and the satisfaction of that judgment. This left the matter, so far as the rights of Winter are concerned, and so far as relates to the right to replace said taxes on the collector's book and add them to the tax on said land for the year 1884, just the same as if no sale under the personal judgment had been made. That sale being void *ab initio,* the right to replace the taxes on the collector's book and add the same to the taxes on the land for 1884, is given by section 277 of the Revenue law. *Hosmer* v. *The People,* 96 Ill. 58.

The fact that a personal judgment had been rendered against Winter for the said taxes, does not satisfy the demand, nor release the land from such tax, nor bar the right to have said taxes placed on the collector's book and have a judgment for the same. *The People* v. *Stahl,* 101 Ill. 346.

The demand for taxes on real estate continues till the taxes are paid. *Almy* v. *Hunt,* 48 Ill. 45.

The sale and assignment of the certificate of purchase, and payment thereof, was a matter between Ella Douthett and the county, and in no way concerned Winter. He has not paid his taxes, and no objection is urged against their justness.

Mr. B. F. Kagay, for the appellees:

The objections to the application for judgment against the land, are: First, that the said taxes were dropped from the collector's book in the year 1879, by direction of the People, by their attorney, H. B. Kepley; second, that there has been personal judgment obtained against Samuel Winter for the said back taxes on said land, and that the same has been fully paid and satisfied; and third, that said land has been sold on a personal judgment against said Samuel Winter, and taxes paid to the county treasurer, and the money duly distributed.

The record shows that each one of the objections is true. It is a general rule, subject to few, if any, exceptions, unless it be when fraud is practiced upon the purchaser, that the doctrine of *caveat emptor* applies in all judicial sales, for the reason that the officer selling has no power to warrant title or impose terms or conditions on the sale, beyond those required by law, because the purchaser is presumed to have examined the title and to know what he is acquiring by his purchase. *Bishop* v. *O'Connor*, 69 Ill. 431; *Wing* v. *Dodge*, 80 id. 564; *Conwell* v. *Watkins*, 71 id. 488; *Holmes* v. *Shaver*, 78 id. 578; *Roberts* v. *Hughes*, 81 id. 130; *Bond* v. *Ramsey*, 89 id. 29.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

The collector of Effingham county applied to the county court of that county for judgment and order of sale of the north-east quarter of the north-east quarter of section 32, town 7 north, range 5 east, for the taxes of 1870 to 1878, inclusive. Samuel Winter, the owner of the land, appeared and filed written objections thereto, which the court, upon due consideration, sustained, and entered an order accordingly. From that order the People have appealed to this court, and ask a reversal.

It appears that in 1879 the county recovered a judgment before a justice of the peace, in the name of the People, against Winter, for the same taxes now in dispute; that a transcript of the proceedings and judgment before the justice was filed in the office of the clerk of the circuit court, and thereby became a judgment of record in said circuit court; that the land in question was regularly sold under that judgment as the property of the said Winter, and was bid off by the county for the full amount of said judgment and costs, and the county thereupon received the usual certificate of purchase, which it afterward sold and assigned to Ella Douthett.

The proceeds of the certificate of purchase were distributed by the collector among the various municipalities entitled thereto, in the same manner as taxes collected on sales of land. Ella Douthett subsequently received a sheriff's deed for the premises, but on learning they were subject to the right of homestead, and that consequently no title passed by the sheriff's deed, she thereupon filed a bill in the circuit court, against Winter and the county, and obtained a decree setting aside the levy, execution, sale and sheriff's deed under the previous proceedings, and reversing the judgment; also subrogating Ella Douthett to all the rights of the county in respect to such judgment. After obtaining the judgment in question, the taxes for which it was rendered were dropped from the collector's books, and so remained from 1879 to 1883, inclusive. In November, 1884, they were again entered upon the tax books as delinquent taxes against said land, and the collector, at the May term, 1885, applied to the county court for judgment, with the result already stated.

From this simple narration of the facts it is manifest there is nothing due the State, county, or other municipality, on account of the so-called taxes now sought to be collected. They were all fully paid and discharged by the proceeds of the sale of the land or certificate of purchase, and if they were paid again, it is very clear neither the State, county nor other municipality, for whose use and benefit the levy was originally made, would receive a cent of the money thus to be collected. For whose use or benefit, then, is the money proposed to be raised? This question is not in express terms answered by the record, but it may reasonably be assumed the suit is conducted in the interest of Ella Douthett, for if it is not, it has not even the shadow of merit in it. Assuming, then, the proceeding is brought in her interest, we are unable to perceive upon what principle it can be sustained. The State obtains a judgment at law against Winter. Douthett, seeking to obtain title to Winter's homestead, pays

the judgment. Finding that she failed to acquire any title to the latter's homestead, she then goes into a court of equity and asks that her worthless title be set aside, and that she be subrogated to the rights of the State under that judgment, and it was so decreed. By virtue of the decree she became the equitable owner of the judgment, the legal title of which still remains in the State, which it holds for her use, and her rights under it and relations to it are precisely the same as if she had bought the judgment directly from the county on the day it was recovered, and the county had applied the proceeds to the payment of the taxes for which it was rendered. She now has a right to enforce its collection as is done in other cases. But if it can not be collected in this manner, and the defendant in the judgment has equitable assets subject to its judgment, she may go into a court of equity and have them so applied. Her rights in these respects are the same as they would be in the case of any other judgment. To hold otherwise would be in direct conflict with the case of *Douthett* v. *Winter*, 108 Ill. 330. The proceeding *in rem* is one for the collection of taxes, strictly so-called, and can not be prosecuted in the interests of mere private persons after the taxes have once been paid. The State may well proceed against the tax debtor *in personam*, and *in rem* against his land, at the same time; but when the taxes are once paid, by whatsoever means, the proceeding *in rem* is not available for the purpose of enforcing the rights, real or supposed, of third parties who may have paid such taxes. The case of *The People* v. *Stahl*, 101 Ill. 346, is entirely in harmony with this view of the subject.

The judgment will be affirmed.

*Judgment affirmed.*